UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JIMMY O.,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Case No.   1:24-cv-00571

Hon.  Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff's appeal of Administrative Law Judge Ohanesian's decision denying Plaintiff's request for Disability Insurance Benefits (DIB) and Supplement Security Income (SSI). This appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff, who is 61 years old, suffers from a number of severe medically determinable impairments, including osteoarthritis of the knees, with left total knee arthroscopy, and obesity. In addition, Plaintiff has heart problems, high blood pressure, and diabetes. Plaintiff asserts that the ALJ's formulation of Plaintiff's Residual Functional Capacity (RFC) failed to adopt mental limitations found in his psychiatric review technique (PRT)[1] or that the

---

[1] *The psychiatric review technique.* The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and

1

ALJ failed to explain why he omitted psychiatric limitations from the RFC. Plaintiff says that the PRT analysis found mild limitations in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. Plaintiff's primary argument is that the ALJ failed to articulate in his RFC all of Plaintiff's functional limitations concerning the mental impairments found in the PRT used by the Commissioner to assess severity of impairments at Step II, and in considering the Listings at Step III. The Commissioner asserts that the ALJ's determination that Plaintiff had mild limitations in mental functioning that did not warrant work related restrictions was supported by substantial evidence. In the opinion of the undersigned, the ALJ fully considered Plaintiff's mental health issues and did not commit legal error by failing to include mental health limitations in the RFC.

For the reasons stated below, the undersigned recommends that the Court affirm the ALJ's decision.

---

"paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p.

I.   **Procedural History**

   A.   **Key Dates**

The ALJ's decision notes that Plaintiff applied for DIB and SSI on December 10, 2020, alleging an onset date of September 15, 2020. (ECF No. 5-2, PageID.39.) Plaintiff's claim was initially denied by the Social Security Administration (SSA) on September 7, 2021. (*Id.*) The claim was denied on reconsideration on December 14, 2022. (*Id.*) Plaintiff then requested a hearing before an ALJ. ALJ Ohanesian conducted a hearing on Plaintiff's claim on June 23, 2023, and issued his decision on July 31, 2023. (*Id.*, PageID.39-50.) Plaintiff timely filed this lawsuit on May 31, 2024. (ECF No. 1.)

   B.   **Summary of ALJ's Decision**

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled. (ECF No. 5-2, PageID.40-41.) Before stating his findings at each step, the ALJ concluded that Plaintiff's Date Last Insured (DLI) was December 31, 2025. (*Id.*, PageID.42.)

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) from September 15, 2020. (*Id.*)

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: osteoarthritis of the knees, with residual effects of left total knee arthroscopy and obesity. (*Id.*) The ALJ discussed a number of non-severe impairments, including diabetes mellitus, hyperthyroidism, and benign prostatic hyperplasia with post void dribbling. (*Id.*) The ALJ noted that Plaintiff's mental

impairment of depressive disorder was not severe because it did not cause more than minimal limitation in his ability to perform basic mental work activities. (*Id.*, PageID.42.) The ALJ also discussed the Paragraph B criteria, finding no significant deficits in understanding, remembering, or applying information, mild limitations in interacting with others and in concentrating, persisting, or maintaining pace, and in adapting and managing self. (*Id.*, PageID.43-44.)

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*, PageID.45.) The ALJ specifically commented on the impairments listed in 1.17 (reconstructive surgery or surgical arthrodesis of a major weight bearing joint), 1:18 (abnormality of a major joint(s) in any extremity), and 14.09 (inflammatory arthritis). (*Id.*, PageID.45-46.) The ALJ also considered Plaintiff's obesity but concluded that it could not meet a listing requirement. (*Id.*, PageID.46.)

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could stand and walk for two hours out of an eight-hour workday. He could occasionally balance, stoop, and climb ramps and stairs. He should never knee, crouch, crawl, and climb ladders, ropes, or scaffolds. He should avoid all exposure to temperature extremes, vibration, and workplace hazards such as unprotected heights and moving, mechanical parts.

(*Id.*, PageID.46.)

The ALJ addressed Plaintiff's RFC by discussing the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms (*Id.*, PageID.46-47.),

- a summary of Plaintiff's statements (*Id.*, PageID.47.),

- a summary of the medical records relating to musculoskeletal and neurological symptoms (*Id.*, PageID.48.),

- a summary of opinions by doctors Gates, Kroning, Ebbert and Golub and P. A. C. Deters (*Id.*, PageID.49.),

- an explanation of how the ALJ arrived at his decision on the Plaintiff's RFC (*Id.*),

At Step Four, the ALJ concluded that, through the DLI, the Plaintiff was able to perform Past Relevant Work (PRW) as a pastor and was not under a disability as defined by the Social Security Administration. (*Id.*)

## II.    Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial

evidence.  42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight.  *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III.  Analysis

Plaintiff argues that because the ALJ found mild limitations in evaluating the psychiatric review technique in the four areas of mental functioning during Steps II and III, the ALJ was required to either include mental limitations in the RFC or explain why mental limitations were not included in the RFC.  The Commissioner argues that the ALJ's RFC assessment is independent of the psychiatric review techniques and the ALJ does not have to rely upon the paragraph B criteria in making an RFC decision.

A claimant's RFC is the most, not the least, a claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative finding of fact reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 598 (6th Cir. 2009). While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec*, 490 F. App'x 748, 754 (6th Cir. 2012). If the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Id.*

Ultimately, the ALJ may consider *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations. SSR 96-8p. The "ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and nonmedical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Plaintiff points to the Tenth Circuit decision in *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), which found substantial evidence did not support the ALJ's conclusion that the claimant did not have severe mental health impairments. The Tenth Circuit found that the ALJ could not rely upon the Step II criteria B findings

in making the Step IV determination.[2] The Tenth Circuit held that an ALJ cannot disregard mental impairments in making an RFC analysis simply because of a Step II finding that the impairments were non-severe. *Id*. at 1068. Rather, the regulations require that the ALJ consider all medically determinable impairments, severe or not, in determining a claimant's RFC. *Id*. at 1069, citing 20 C.F.R. §§ 404.1545(a)(2), 416.9459(a)(2). Nevertheless, an ALJ's failure to include mild mental health limitations in the RFC is not necessarily error.

Recently, Judge Beckering rejected the argument that an ALJ erred by not including paragraph B mild limitation findings in the RFC analysis. Judge Beckering explained in *Hower v. Commissioner of Social Security*, No. 1:23-cv-157, 2023 WL 8654386, *3 (W.D. Mich. Nov. 29, 2023) *report and recommendation adopted*, 2023 WL 8652308 (W.D. Mich. Dec. 14, 2023) as follows:

> Plaintiff argues that, because the ALJ found that he experienced mild limitations in several areas of mental functioning, it was error to exclude from his RFC any non-exertional limitations. The ALJ, however, clearly stated that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (PageID.27). As the ALJ further noted, "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (*Id.*). As Defendant correctly notes, the distinction articulated by the ALJ is consistent with the relevant regulations and recognized by the Sixth Circuit. *See, e.g., Wood v. Commissioner of Social Security*, 2020

---

[2] The Tenth Circuit noted that the ALJ did provide "some degree" of discussion regarding mental health impairments as part of the RFC determination and stated that although "far from comprehensive" the discussion may have satisfied the ALJ's obligation to provide a more detailed assessment. *Id*. at 1069. Ultimately, however, the Tenth Circuit disagreed with the ALJ's analysis and conclusions regarding the claimant's mental impairments as not supported by substantial evidence. *Id*.

>   WL 618536 at *3 (6th Cir., Jan. 31, 2020) (it is not error for an ALJ to exclude from his RFC assessment limitations identified at step 2 of the sequential analysis); *see also*, *Wright v. Commissioner of Social Security*, 2021 WL 1085002 at *7 (W.D. Mich., Mar. 22, 2021) (same).

*Id.* Where an ALJ found a claimant's mental health limitations non-severe at Step II, it was not error to determine that mild impairments did not affect the RFC determination. *Webb v. Commissioner of Social Security*, No. 1:20-cv-1206, 2022 WL 4545508, *7 (W.D. Mich. Sept. 29, 2022).

Before fully addressing the paragraph B criteria, ALJ Ohanesian discussed in detail his reasons for concluding that Plaintiff did not present with severe mental impairments:

>   The claimant's medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe. Upon examination, he has presented herself to his various examiners with largely insignificant psychological signs and symptoms, appearing alert and oriented; cooperating with his examiners; demonstrating normal mood, affect, thought content, attention, concentration, judgment, and behavior; denying experiencing depression, nervousness, anxiety, impaired memory, hallucinations, or perceptual disturbances; and generally appearing to be in no acute mental distress (Exhibits 3F/82,84,125,128; 4F/4; 5F/67-68; 11F/2; 12F/2,6,11-12,15,21,26; 13F/14,16,38). He did not demonstrate noteworthy psychological signs or symptoms during his consultative examinations. Pravin Patel, M. D., said that mentally, the claimant was alert, oriented, clear, coherent, and able to handle his own funds during his August 2021 consultative examination (Exhibit 4F/3-4). In October 2022, Meghan Deters, P.A.-C., noted that he had no psychological complaints (Exhibit 8F/7). In November 2022, consultative examiner Alison Bush, M. S., said he was oriented; spontaneous; cooperative; and able to establish rapport, focus, and concentrate during the examination (Exhibit 9F/3-4). He recalled seven digits forward and four backward during a digit-span test as well as his date of birth; named the current and five currently living former Presidents of the United States; named five large cities; correctly performed simple arithmetic, including serial sevens; spelled "WORLD" correctly backward and forward; explained

> the meaning of common idioms; and explained the similarities and differences between objects (Id. at 4). The claimant's daily functioning is not limited by his mental functioning: he can dress and groom himself, take his medication without reminders, prepare quick meals, shop with his wife, handle his finances, and get along with others (Exhibits 4E/6-9; 4F/2; 8F/2; 9F/3; HT). He can drive an automobile, suggesting he can read and recognize traffic signs, signals, and symbols; navigate roadways amidst moving traffic; remember routes, recognize landmarks, or barring that, use maps or navigation applications such as Google Maps; and has the attention, focus, and judgment to do so safely (Exhibits 4E/8; 4F/2; 9F/3; HT). He can follow instructions and persist at tasks long enough to finish them (Exhibit 4E/10). He did not complain of mental impairments at his hearing, noting that he is unable to work due to pain and weakness in his knees as well as urinary difficulties. The preponderance of the evidence does not corroborate the existence of severe mental impairments.

(ECF No. 5-2, PageID.43.) The ALJ further stated that Plaintiff's daily activities showed that he has "mental facilities" that do not support disabling symptoms because he can "dress and groom himself, prepare quick meals, take his medication without reminders, . . . follow instructions", and drive a vehicle. (*Id.*, PageID.48.)

In the opinion of the undersigned, the ALJ fully evaluated Plaintiff's mental health condition and determined that no mental health restrictions were justified in the RFC. The ALJ did not err in his decision.[3]

---

[3] Plaintiff also argues that it was error to conclude that he could perform past work as a pastor because such work is highly skilled and outside the RFC set forth by the ALJ. The VE testified that a pastor or clergy member position is highly skilled and considered light work per the DOT but was sedentary as performed by Plaintiff. (ECF No. 5-2, PageID.96.) The ALJ relied upon the VE's testimony and concluded that a pastor job is considered light work but as performed by Plaintiff it was sedentary and skilled, and that the job fell within "the physical and mental demands" of Plaintiff's RFC. (*Id.*, PageID.50.) In the opinion of the undersigned, Plaintiff has shown no error and substantial evidence supports the ALJ's decision.

## IV. Conclusion

Accordingly, it is respectfully recommended that the Court affirm the decision of the Commissioner because the ALJ did not commit legal error, and substantial evidence exists to support the ALJ's decision.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   May 12, 2025                                          /s/ *Maarten Vermaat*
                                                                            MAARTEN VERMAAT
                                                                            U.S. MAGISTRATE JUDGE